UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROSEMARY B. WILLIAMS                                CIVIL ACTION

VERSUS                                              NO. 09-3167

MICHAEL J. ASTRUE, COMMISSIONER                     SECTION "C" (3)
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA") and for supplemental security income benefits under Title XVI of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on April 30, 2004, alleging that she had been disabled since April 30, 2003. (Adm. Rec. at 92-97). After the Regional Commissioner denied plaintiff's applications on initial determination and reconsideration, (*id.* at 47-50), plaintiff requested a hearing. (*Id.* at 51). The agency scheduled a hearing on April 19, 2006, which plaintiff failed to attend. (*Id.* at 363-66).

The agency then dismissed plaintiff's applications for benefits, (*id.* at 17, 366), and plaintiff filed a request for review. (*Id.* at 83). The Appeals Council granted the request for review, and the agency rescheduled a second hearing. (*Id.* at 17). After three continuances to allow plaintiff to secure legal representation and medical records, the agency held a hearing on March 26, 2007. (*Id.* at 317-38). Plaintiff appeared and testified at the hearing and was represented by counsel. (*Id.*). Deborah Bailey, a vocational expert, was also present throughout the hearing and testified. (*Id.* at 330-34).

On October 19, 2007, the Administrative Law Judge ("ALJ ") denied plaintiff's application for benefits. (*Id.* at 17-28). Plaintiff asked for review of the ALJ's decision, which the Appeals Council denied on February 26, 2009. (*Id.* at 6-8). The Appeals Council's denial renders the ALJ's decision the final decision of the agency. Plaintiff then sued defendant in this Court, seeking review of the ALJ's decision under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.     ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§

3

423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is

4

disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.  ISSUES ON APPEAL

There is one issue on appeal:

(1) Whether substantial evidence supports the ALJ's determination that plaintiff does not meet Listings 12.05(c) or (d).

## V.  ANALYSIS

**1.  Whether substantial evidence supports the ALJ's determination that plaintiff does not meet Listings 12.05(C) or (D).**

Listing 12.05 contains "an introductory paragraph with the diagnostic description for mental

retardation" and "four sets of criteria (paragraphs A through D)." C.F.R. Listing 12.00(A).

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

C.F.R. Listing 12.05. To satisfy Listing 12.05(C), a claimant must demonstrate (1) a qualifying IQ score, (2) deficits in adaptive functioning manifested before age 22, ***and*** (3) a physical or other mental impairment that imposes an additional and significant work-related limitation of function. *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009); *R.O.L. v. U.S. Comm'r Social Sec. Admin.*, Civ. A. No. 09-cv-0253, 2010 WL 996422, at *2 (W.D. La. Mar. 17, 2010).

The Commissioner first argues that this Court should uphold the ALJ's opinion on the ground that the record is devoid of evidence that plaintiff's mental retardation manifested itself before the age of 22. As noted above, Listing 12.05 states: "Mental retardation refers to

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."

> The Fifth Circuit has held that
>
> the ALJ did not err in construing Listing 12.05 to require an independent showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; that is to say, the evidence demonstrates or supports onset of the impairment before age 22."

*Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). Under *Randall*, plaintiff must satisfy the substantive criteria in Listing 12.05's diagnostic description independently of the severity criteria in paragraphs A, B, C or D of the Listing. In short, plaintiff must always independently demonstrate that the alleged mental retardation manifested itself before age 22.

The Court's review of the record reveals that no such evidence exists here. Plaintiff testified that she stayed successfully in school until the ninth grade. (Adm. Rec. at 320). Plaintiff also testified that while she received low grades in school, she had never been held back nor failed a grade. (*Id.* at 325). There is simply no evidence in the record that plaintiff showed signs of deficits in her adaptive functioning at any point before age 22. Accordingly, plaintiff can not meet the substantive requirements of Listing 12.05. *Randall*, 570 F.3d at 659-60.

While the Court notes that the ALJ and counsel for plaintiff discussed Listing 12.05's substantive requirements at one of the hearings, (*id.* at 345-46), and counsel's attempt to gather records from plaintiff's elementary and high schools, there is no specific mention of Listing 12.05 and the age-22 requirement in the opinion of the ALJ. Accordingly, and because it is unclear that

7

the ALJ relied on this ground to deny plaintiff's claim, the Court will address plaintiff's argument on the merits. Indeed, if the appellate court "cannot rely on independent findings of the district court," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), because it may only review the decision of the ALJ, then it is axiomatic that this Court may not affirm the ALJ on a ground on which he did not rely. However, the Court notes that the three-factor test under Listing 12.05(C) is conjunctive. *Randall v. Astrue*, 570 F.3d 651 (5th Cir. 2009). Accordingly, the ALJ may deny the claim should plaintiff fail to meet any one of the required elements, which he did here, finding that plaintiff has no other physical or mental impairment that imposes an additional and significant work-related limitation of function. *See, e.g., Johnson v. Bowen*, 864 F.2d 340, 345-46 (5th Cir. 1988) (recognizing that while plaintiff's IQ fell within the range of mental retardation, plaintiff had no other physical or mental impairment that significantly limited plaintiff's function). After reviewing the evidence outlined below, the Court finds that substantial evidence supports the ALJ's finding that plaintiff does not meet the criteria in Listing 12.05(C) or (D).

Plaintiff notes that on the Mental Residual Functional Capacity Assessment ("RFC") that Nathaniel Mullener, Ph.D, completed, Dr. Mullener noted that plaintiff was "markedly limited" in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods and the ability to complete a normal work-day [sic] and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 301-02). These three abilities are listed under the rubric "Sustained Concentration and Persistence."

Plaintiff also notes that under the rubric "Social Interaction," Dr. Mullener noted that she was

markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.* at 302). Lastly, Dr. Mullener found plaintiff with a marked limitation in the ability to set realistic goals or make plans independently of others. (*Id.*). In all other areas, Dr. Mullener found that plaintiff was not significantly or only moderately limited. (*Id.* at 301-02). Dr. Mullener based many of his conclusions on the results of a psychological evaluation that he performed three months before he completed the RFC. (*Id.* at 27, 303).

Taking the subsections as plaintiff argues them, plaintiff contends that she satisfies Listings 12.05(D)(3) and 12.05(C).[1] Listing 12.05(C) requires that plaintiff has a "valid verbal performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, subpt. P, app. 1, § 1205(C). The Commissioner does not dispute that plaintiff's I.Q. score falls with the range of 60 and 70 required by Listing 12.05(C). (Adm. Rec. at 172).

The Commissioner disputes, however, that plaintiff has demonstrated a "physical or other mental impairment imposing an additional and significant work-related limitation of function." With regard to this Listing, plaintiff argues that "the ALJ found that the arthritis and several of the other impairments complained of by Plaintiff were severe. This finding coupled with the IQ scores should mandate a finding of disability under 12.05 (c), listed above." Pl.'s Mem. Supp. [Doc. #12-2] at p. 6. That is all that plaintiff argues.

The Court recognizes that the ALJ found that plaintiff has the following severe impairments:

---

[1] Plaintiff also contends that she satisfied Listing 12.05(D)(7). There is no such listing however.

hypertension, asthma, arthritis, back and leg pain, depression/anxiety and mild mental retardation. (Adm. Rec. at 19). However, the ALJ also found that none of these impairments constituted a physical or other mental impairment that imposed an additional and significant work-related limitation of function. Specifically, the ALJ found that his "independent assessment reaches the same result [as the state agency] as I find the claimant is not significantly limited by her impairment." (Adm. Rec. at 27).

First, the ALJ found that plaintiff's asthma was "'not severe'" because the record reflected that plaintiff never visited an emergency room nor a physician within the last 12 months for treatment of her asthma. (*Id.* at 23). Neither did he find any testimony in the record as to any limitation resulting from plaintiff's asthma. (*Id.*). With regard to plaintiff's hypertension, the ALJ found that her hypertension "appears controlled with medication. There is no evidence of any hypertensive end organ damage." (*Id.* at 20). Indeed, the ALJ noted that during her examination in October 2004, her cardiovascular examination was normal, her chest and lungs were normal and her neurological examination was normal. (*Id.*). Moreover, the ALJ found that plaintiff's hypertension had only ever been "under conservative medical management." (*Id.* at 25).

The ALJ also found that plaintiff's arthritis and back and leg pain did not significantly limit her activities. The ALJ noted that there was no evidence of fracture, dislocation or tear to plaintiff's wrist even though she had a history of wrist injury with occasional pain. (*Id.*). As to plaintiff's back pain, the ALJ noted that there was no evidence of traumatic injury. (*Id.*). He noted that although there was evidence of a *mild* lumbar scoliosis with convexity to the right, plaintiff ambulates without difficulty, she can walk on her heels and toes and squat about two-thirds of the way down and rise

without support. (*Id.*). Plaintiff's straight leg test was negative bilaterally, and surgery had never been indicated. (*Id.*). The ALJ also noted that plaintiff is prescribed pain relievers for any pain. (*Id.*).

The ALJ found that plaintiff's primary impairment "appears to be depression." (*Id.* at 26). The ALJ noted that plaintiff was attending – at least at the time of his opinion – Chartres Mental Health where she was receiving individual counseling and medications. (*Id.* at 26). The ALJ concluded that although plaintiff self-isolates and cries "a lot," plaintiff is not homicidal nor is she psychotic. (*Id.* at 27). Plaintiff thinks about suicide, but the ALJ concluded that she has no plan or intent to commit suicide. (*Id.*). The ALJ also noted that plaintiff reports no effects from any medical therapy nor has she ever required psychiatric hospitalization. (*Id.*). Indeed, before Hurricane Katrina, plaintiff lead a routine life: She was married, gave birth to and cared for five children and worked for eight years as a groundskeeper. (*Id.* at 171, 185). Accordingly, the ALJ ultimately concluded that none of plaintiff's impairments significantly limited her activities. Substantial evidence supports this conclusion, and, thus, plaintiff can not meet Listing 12.05(C).

With regard to Listing 12.05(D)(3), plaintiff argues that she satisfies the Listing because her I.Q. is between 60 and 70 and she suffers from three marked limitations in concentration, persistence or pace and 5 moderate limitations in the same area. Plaintiff argues that the ALJ ignored Dr. Mullener's RFC, but the Court finds that the ALJ considered Dr. Mullener's RFC and accorded it the appropriate weight. (*Id.* at 21-22, 26-27).

The main problem with plaintiff's argument here is that whether Dr. Mullener determined plaintiff to be not significantly, moderately or markedly limited under any rubric is of no moment.

Such conclusions intrude on an area specifically reserved to the Commissioner, and the ALJ may reject such an opinion without referring to the factors used to evaluate a typical medical opinion. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (on reh'g). Indeed, it is the Commissioner's duty to determine whether a party is disabled and to what extent and that party's RFC and not that of a treating physician. SSR 96-5p. Such conclusions are entitled to little – if any – weight.

Moreover, the Court finds that the ALJ's conclusions are supported by substantial evidence. Notwithstanding plaintiff's limited I.Q., plaintiff has the ability to read and spell at the third-grade level, spell single and two-syllable words and read simple and multi-syllable words. (Adm. Rec. at 21, 24). Her arithmetic level is at a fourth-grade level, with an ability to perform simple and intermediate subtraction and simple multiplication and division, and she can count change. (*Id.*). Her thinking revealed no disorganization. (*Id.* at 21). Her memory and judgment appeared adequate for her ability level. (*Id.*). While Dr. Mullener opined that plaintiff was markedly limited in concentration, consistence and pace, the evidence above supports the ALJ's conclusion that plaintiff has the capacity to perform her past work as a grounds keeper and/or house keeper. This Court can not re-weigh the evidence to find otherwise.

The ALJ noted that Dr. Mullener found that plaintiff lacks the ability to engage in basic work-related activities on a regular and sustained basis due to her clinical depression and mild mental retardation. (*Id.* at 26-27). The ALJ then found, however, that these findings were inconsistent with the evidence in the record and questioned Dr. Mullener's reliance on a psychological evaluation performed three months before he completed the RFC. (*Id.*). Specifically, the ALJ found that

> [t]he claimant is receiving mental health treatment and anti-depressive medications are prescribed. She self-isolates and cries "a lot." Although she thinks about suicide, she has no plan or intent to commit suicide. The claimant is not homicidal. She is not psychotic. She does not report any effects [sic] from medication therapy. The claimant has never required psychiatric hospitalization. This being the case, I accord "no weight" to the opinion of Dr. Mullener.

(*Id.* at 27). As related above, the Court finds that substantial evidence supports the findings of the ALJ. There are inconsistencies between the findings of Dr. Mullener in his RFC and the evidence in the record and even internal inconsistencies in Dr. Mullener's own findings, as the ALJ noted. It is the duty of the ALJ – and not that of this Court – to resolve inconsistencies in the evidence. *Carey,* 230 F.3d at 135.

Lastly, plaintiff objects that the ALJ rejected counsel's hypothetical "to the vocational expert that included the only set of psychological limitations in the record to which the vocational expert responded there would be no jobs available to Plaintiff, a finding that also requires a finding of disabled." Pl.'s Mem. Supp. [Doc. #12-2] at p. 6. This hypothetical would relate to step five of the sequential evaluation. As the Commissioner correctly notes, however, the ALJ found that plaintiff was not disabled at step four of the five-step sequential evaluation. Accordingly, any action that the ALJ took as to step five is irrelevant. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## VI. CONCLUSION

Plaintiff has failed to show that substantial evidence does not support the ALJ's determination that plaintiff does not meet Listings 12.05(c) or (d). Substantial evidence supports the ALJ's finding that plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the determination. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 6th day of July, 2010.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**